1

2               UNITED STATES DISTRICT COURT

3                     DISTRICT OF NEVADA

4                           * * *

5   TERRIA MCKNIGHT,                    Case No. 3:17-cv-00483-MMD-CBC

6                         Plaintiff,              ORDER

        v.
7
    NEVADA DEPARTMENT OF HEALTH
8   AND HUMAN SERVICES, DIVISION OF
    WELFARE AND SUPPORTIVE
9   SERVICES, *et al.*,

10                        Defendants.

11

12  **I.      SUMMARY**

13          Plaintiff Terria McKnight brings this action *pro se* based on events that occurred

14  during a state administrative hearing ("Hearing") to determine her eligibility for

15  Supplemental Nutritional Assistance Program ("SNAP") benefits. Before the Court are

16  two motions to dismiss (ECF Nos. 25, 30) filed by Defendant State of Nevada *ex rel.*

17  Nevada Department of Health and Human Services, Division of Welfare and Supportive

18  Services ("DWSS"). The first motion relates to claims made against DWSS. (ECF No. 25.)

19  The second motion relates to claims made against individuals who participated in the

20  Hearing: Sarah Polier, Lori Kreck, and Kari Yelenich. (ECF No. 30.) The Court has

21  reviewed Plaintiff's consolidated response (ECF No. 32) as well as Defendant's

22  consolidated reply (ECF No. 33). For the following reasons, the Court denies the first

23  motion to dismiss and grants the second motion to dismiss.

24  **II.     BACKGROUND**

25          The following facts are taken from Plaintiff's Second Amended Complaint ("SAC")

26  (ECF No. 15) unless otherwise indicated.

27          Plaintiff is a disabled individual who resides in Lyon County, Nevada. (*Id.* at 2.)

28  Plaintiff submitted a SNAP redetermination application requesting SNAP benefits in

March 2017. (*Id.* at 4.) Plaintiff attended an in-person interview with DWSS in Yerington. (*Id.* at 5.) When the interviewer entered expenses into the computer, the interviewer refused to enter medical and shelter costs even though Plaintiff pays $275 for mortgage, $320 for lot rent, yearly property taxes of $108, gas heating in the amount of $214, electric in the amount of $284, and out-of-pocket medical expenses of $160. (*Id.*) DWSS sent Plaintiff an insufficient information request on March 29, 2017, showing that her shelter expenses were never considered. (*Id.*)

Plaintiff filed an appeal and participated in the Hearing by telephone. (*Id.*) The Hearing was adversarial in nature but did not incorporate rules of evidence. (ECF No. 30 at 6.) Defendant Yelenich presided over the Hearing as the "Hearing Officer." (*See* ECF No. 15 at 7; *see also* ECF No. 30 at 6.) Defendant Polier argued DWSS's position as a representative of DWSS's Centralized Hearing Representative Team. (ECF No. 30 at 6.) Defendant Kreck attended the Hearing only to provide support to Yelenich if she needed it. (*Id.*) Kreck was an experienced Hearing Officer, and Yelenich was new to the role. (*Id.*)

Plaintiff alleges the following events occurred during the Hearing. Someone asked Plaintiff if she had "receive[d] the information from the DSS agency." (ECF No. 15 at 5.) Plaintiff indicated that she had not. (*Id.*) Plaintiff did not receive the documents until 30 minutes into the hearing. (*Id.* at 7.) Someone faxed about 53 pages of documents and exhibits to DWSS workers in the Yerington office that Polier read aloud very fast. (*See id.* at 5, 7.) Polier "was reading very fast and referring to documents [that were illegible]." (*See id.*) When Plaintiff tried to explain that she was confused and having trouble following along and that she did not receive the documents early enough to review them, someone said: "Don't worry. This is the way we always do this." (*Id.* at 5.) Yelenich said she would note this in her decision. (*See id.* at 7.) Polier read all 53 pages and afterward someone asked Plaintiff very sarcastically: "Now how may I help you?" (*Id.* at 5-6.) No one asked Plaintiff for medical documentation even though DWSS was supposed to consider medical expenses. (*Id.* at 7.) Neither Kreck nor Yelenich made rules about exchanging evidence prior to the hearing. (*Id.*) Plaintiff told Kreck and Yelenich that she felt the

2

hearing violated her due process rights because the notices she received were unclear. (*Id.*)

DWSS notified Plaintiff on July 10, 2017, that it affirmed DWSS's earlier decision. (*Id.* at 6.)

Plaintiff alleges that she is a qualified individual with a disability under the ADA. (*Id.* at 10.) She alleges that she was denied the benefit of full participation in DWSS's program when Polier read quickly during the hearing and when she did not receive documents until 30 minutes into the hearing. (*Id.*) Plaintiff alleges that DWSS was aware of her disability and that the way the hearing was held affected her ability to think clearly, read and concentrate. (*Id.* at 11.)

United States Magistrate Judge Carla B. Carry permitted Plaintiff to proceed with the following claims: (1) violation of procedural due process under 42 U.S.C. § 1983 against Polier, Kreck, and Yelenich; and (2) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, against DWSS and the DWSS Administrative Adjudication Office ("AAO"). (ECF No. 17 at 3.) Plaintiff seeks injunctive relief, punitive damages, emotional distress damages, a declaratory judgment that Defendants violated Plaintiff's rights, and monetary damages in the amount of $2,000,000. (ECF No. 15 at 12.)

**III. LEGAL STANDARD**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a

///

claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

**IV.  FIRST MOTION TO DISMISS (ECF NO. 25)**

In its first motion to dismiss, Defendant State of Nevada argues that Plaintiff's SAC should be dismissed based on *Burford*[1] abstention. (ECF No. 25 at 4.) The Court already rejected Defendant's argument regarding *Burford* abstention. (ECF No. 5 at 5-8.) The Court rejects Defendant's argument now for the same reasons.

Defendant also asks the Court to dismiss Plaintiff's §1983 claim to the extent that it is made against Defendant State of Nevada. (ECF No. 25 at 6-8.) The Court denies the motion in this regard because Plaintiff was not allowed to proceed with a § 1983 claim against Defendant State of Nevada. (*See* ECF No. 17 at 3.)

Accordingly, the Court denies Defendant State of Nevada's first motion to dismiss.

///

---

[1]*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

1  **V.      SECOND MOTION TO DISMISS (ECF NO. 30)**

2         In its second motion to dismiss, Defendant State of Nevada primarily asks the

3  Court to dismiss Plaintiff's § 1983 claim against Polier, Kreck, and Yelenich based on

4  qualified immunity. (ECF No. 30 at 9-13.) The Court agrees with Defendant that Plaintiff's

5  § 1983 claim is barred by the doctrine of qualified immunity.[2]

6         The doctrine of qualified immunity protects government officials "from liability for

7  civil damages insofar as their conduct does not violate clearly established statutory or

8  constitutional rights of which a reasonable person would have known." *Harlow v.*

9  *Fitzgerald*, 457 U.S. 800, 818 (1982). Generally, courts apply a two-step analysis to

10 determine whether qualified immunity applies to bar certain claims. First, a court decides

11 whether the facts *as alleged by the plaintiff* make out a violation of a constitutional right.

12 *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (emphasis added), *holding modified by*

13 *Pearson v. Callahan*, 555 U.S. 223 (2009). Second, the court decides whether the right

14 at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.*

15 Courts may "exercise their sound discretion in deciding which of the two prongs of the

16 qualified immunity analysis should be addressed first in light of the circumstances in the

17 particular case at hand." *Pearson*, 555 U.S. at 236. The burden to establish that a right

18 was "clearly established" at the time of the alleged misconduct rests with the plaintiff. *See*

19 *Green v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009), *vacated on other grounds as*

20 *noted in Greene v. Camreta*, 661 F.3d 1201 (9th Cir. 2011). If there is no constitutional

21 violation, the inquiry ends and the officer is entitled to qualified immunity. *See Saucier*,

22 533 U.S. at 201.

23        The Court addresses the second *Saucier* inquiry first because Plaintiff has not

24 carried her burden of showing that the rights allegedly violated were clearly established.

25 Plaintiff cited no case law in her response to show that she had a clearly established right

26 to have evidence presented in a certain way at the Hearing. (*See* ECF No. 5 at 1-2.) Nor

27 has Plaintiff cited case law showing that she had a clearly established right to receive any

28
_____
[2]Accordingly, the Court declines to address Defendant's remaining arguments.

evidence at all before the Hearing. (*See id.*) Plaintiff asserts that the Court has found immunity does not apply to Yelenich, Polier, and Kreck (*id.* at 2), but the Court has not considered whether they were entitled to qualified immunity until now (*see* ECF Nos. 3, 5, 10, 14, 17). The Court only considered the issue of sovereign immunity with respect to DWSS. (*See* ECF No. 10 at 4.)

Accordingly, the Court finds that Plaintiff's claims against Yelenich, Polier, and Kreck are barred by the doctrine of qualified immunity.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's first motion to dismiss (ECF No. 25) is denied.

It is further ordered that Defendant's second motion to dismiss (ECF No. 30) is granted. Plaintiff's claims against Yelenich, Polier, and Kreck are dismissed.

DATED THIS 21st day of October 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE